Our final argument of the day is Quality Custom Distribution against the Teamsters Union. Mr. Wolflett, if it please the Court, it's been 20 years, more than 20 years, since I first appeared before this circuit, and it's one of the greatest privileges of my professional career. It remains the same. This appeal... Well, then you won't mind my taking you on a diversion. Yes. Because I'd like to know your client's real name. QCD, Quality Custom Distribution. Your certificate of interest describes it as a subsidiary of another corporation. If it is a subsidiary, then presumably it has a corporate identifier in its name. Now, my clerks and I looked up online where it describes itself as a division of Golden Gate Foods Corporation, which is not a corporation. And in fact, a division is not a juridical entity at all and can't file a lawsuit. So I would really like to know what your client is. Is your client some corporation? Is it an LLC? Is it Golden Gate Foods Corporation? My understanding is Quality Custom Distribution is a incorporation. Then what is its name? State law requires corporations to include corporate identifiers. Quality Custom Distribution, Inc. Your certificate of interest does not include an Inc., nor does your caption. You have verified to the court that there is no corporate identifier. I think we need supplemental filings from the parties because I'm not persuaded that Quality Custom Distribution is a juridical entity entitled to sue. You need to persuade me that it is something other than a division of Golden Gate Foods Corporation. I'm not prepared today to argue that. Obviously not, but there will have to be supplemental filings before we proceed to decide this case. Would we like to suspend oral argument? The oral argument will proceed. This is your only chance. We're not going to hold another oral argument, but we will need supplemental filings. Understanding. Okay. Now, Mr. Wolflake, please proceed. This appeal arises out of a challenge by appellant QCD to an arbitration award concluding that COVID-19 was not an act... Oh, one more thing I need to notice for both sides. The Certificate of Interest describes Quality Custom Distribution as a subsidiary of Golden Gate Foods Corporation, which as far as I can tell does not exist. The Delaware Corporate Registry does not list it. It lists Golden State Foods International, Golden State Foods LLC, and Golden Gate Foods Ms. West LLC, but no Golden Gate Foods Corp. So we need to know what this Golden Gate entity is, too, because it may also be a phantom. Anyway, now, Mr. Wolflake, please proceed. Understood, Your Honor. I would like to point out that COVID-19 was not an act of God excusing QCD for guaranteeing 40 hours each week an employee works. Respondent argues that arbitrator Myers was simply interpreting the party's contract and that the term act of God in this court should simply give wide deference to that decision. While QCD, whatever entity it might be, acknowledges that the arbitrator's decision is a given wide deference, that deference is not unlimited. An arbitrator's decision that exceeds the scope of the authority conferred by the party's agreement should be overturned. The test in this circuit and in every circuit as dictated by the Supreme Court, the U.S., is the award is legitimate only so long as it draws its essence from the agreement. The arbitrator cannot dress his policy desires up in contract interpretation clothing to shield his decision from judicial review. This is exactly what arbitrator Myers did in rendering his decision. And I'll read from that decision. The record further demonstrates, this is arbitrator Myers, further demonstrates that even if the pandemic could have been appropriately considered an act of God by late March or early April 2020, any impact on the company's business was not a direct result of the pandemic. Instead, much of the general downturn that occurred during this time period at issue was due to the cascading impact of the general lack of an appropriately and timely response to the virus. Emergence that might have limited its spread had effective responses been implemented earlier and more broadly. This is clearly arbitrator Myers' political view about the government's response to COVID-19. This Court of Appeal has ruled that where the arbitrator's decision is based on some body of thought or feeling or policy outside of the party's agreement, as a matter of law, the decision fails to draw its essence from that CBA and must not be enforced. Arbitrator Myers' decision does not draw its essence from the party's CBA. The collective bargaining agreement does not define the phrase act of God. And so one has to look outside it for a definition. Are you arguing that an arbitrator can never define a term that is not defined in a contract? No. All right. So if you're not arguing that, you must be arguing that he supplied an incorrect definition. No. To the contrary, Your Honor. I'm saying he inserted his political views on COVID-19 and interpreting — I don't know. I don't know what is political about that. What the arbitrator seems to have said is that he is distinguishing between natural disasters and governmental disasters. And he thinks this is on the governmental disaster side of that line. Well, that's a real line. If he thinks it's on the governmental disaster side of the line, that can be right or wrong, but it's canonical that we're not supposed to be deciding whether the arbitrator was right or wrong. I respectfully disagree. Government action is the result of natural disasters. For example, the fires in L.A. The fires occurred in Altadena, California. And if they started on Tuesday and if Monday the employees reported to work, on Tuesday the town was burned down and the police and fire departments blocked ingress and egress to that plant to arbitrator Myers' decision, we would be responsible for paying them 40 hours. And I think an act of God is beyond the employer's ability to control. It doesn't along what you're saying. The arbitrator also seemed to make a distinction between this is on page 16 of his decision, saying that generally accepted understanding of act of God is typically a single incident that occurs quickly and without warning. So that's his interpretation. And he says the COVID-19 pandemic is a much different type of phenomenon that has been a slow-moving disaster for which the human element has been a major contributing factor. Why isn't that sufficient? What's wrong with that interpretation? He says he interprets act of God one way in a temporal sense, and he says, look, that's not what we had with COVID. I would think that your fires might satisfy that temporal sense, but perhaps COVID-19 doesn't because it's longer lasting. And certainly it seems like the arbitrator is well within his purview to make that distinction. The arbitrator could make that distinction. But he introduced his political views in our mind, saying due to the cascading impact or the general lack of appropriate and timely response to the virus, that's a political decision. There's no evidence whatsoever in the record or elsewhere in society that the government responded slowly. Arbitrators— Thank you, counsel. Your time has expired. Sorry. Mr. Richardson, let me begin by asking you your view about who is the plaintiff. May it please the court, Joseph Richardson here on behalf of Respondent Appellee Teamsters Local 710. I'm not in a position to make an authoritative representation on the corporate status of quality custom distribution. I can tell you from my dealings with them during the arbitration proceeding and occasionally involving other grievances that it's my understanding that it is an unincorporated subdivision of Golden State Foods. And I could not tell you which of the corporate entities your office discovered them. That indeed is what quality custom distribution itself said in its answer to your counterclaim, in answer to the union's counterclaim. Well, we need to figure it out because if it's a division, it just can't sue in its own name. Yes, Your Honor. There's nothing to do with this suit except dismiss it, unless, of course, the real party to the contract is substituted. I understand, Your Honor. Before I begin with my argument, I just wanted to address a point that my friend, Mr. Wolflick, made. He said that QCD defines an act of God as being beyond the employer's ability to control. And I just want to take issue with that because both I think it's inconsistent with the arbitrator's award. It's also inconsistent with their brief, which adopts the law. It means that any order by Governor Pritzker is an act of God, which implies, in turn, that Governor Pritzker is God. Yes, Your Honor. Which I don't think is true. Yes, Your Honor. And QCD has, from the start, in the arbitration proceeding before the district court and now here, tried to make this case about whether or not the COVID-19 pandemic was an act of God. And I won't belabor the standards for arbitral review, but just briefly, respectfully, we do not believe that that's what this case is about. This case is really predominantly about causality. And I will note that both parties agree that the arbitrator's definition of the term act of God, a natural hazard outside of human control, is an accurate one. QCD cites it with approval in its brief. Well, I don't know if you can say that any use of language is accurate. You can only ask whether it's consistent with how people normally use the term. Right? That's what the philosophy of language teaches about language. There is no internal meaning to any words. It's only the meaning society gives it. Thank you, Your Honor. And that brings up an important point, which is that the arbitrator was urged by both parties to apply the plain and ordinary meaning of the term act of God, which, as you noted, is not further defined in the contract. And that's what he did. He supplied a definition that is consistent with the general understanding. It's also consistent with the interpretation that QCD urged before the arbitrator. And he defined it as a natural hazard outside of human control. There's no dispute about that term. The dispute really centered on the application of that term to the business circumstances that QCD faced in April of 2020 when it decided to avoid its obligations under the contract to have a 40-hour guarantee for most of its employees. And so the arbitrator was faced with two questions as part of that analysis. First of all, was the pandemic, which was the factor that QCD relied on, in triggering the act of God language, whether the pandemic was, in fact, an act of God in accordance with that ordinary meaning? And secondly, if the answer to the first question is yes, were QCD's business operations directly and approximately affected by that act of God? Put another way, the arbitrator was really interpreting the first part of the sentence that we've all been talking about. In the event of an act of God, QCD is no longer required to meet the 40-hour guarantee. In the event of. And so the arbitrator was looking at, first of all, was this an act of God? And second of all, is it so directly and approximately related to QCD's business circumstances that it's entitled to rely on it to avoid its contractual obligations? So, for example, I think everybody would agree that an earthquake in San Francisco is an act of God. And if QCD had a business operation in San Francisco that was affected by that earthquake, I don't think we could make the argument that they were not entitled to avoid the 40-hour guarantee. It depends. If you have a contract with an engineer who promises to make the building earthquake resistant and doesn't, I don't think one could defend the tort suit by saying that you're dealing with an act of God. You have defeated my analogy, Judge Easterbrook. However, the point is QCD has tried to make this case about whether or not the COVID-19 pandemic was an act of God, and respectfully, that's not the issue that was primarily before the arbitrator. And the arbitrator's decision shows that, and they've already quoted the language, because what the arbitrator ultimately decided was even if you could decide that the COVID-19 pandemic was an act of God, it did not directly affect QCD's business such that it was entitled to invoke Section 4.5 of the contract. And there were facts that the arbitrator added into the award that were in the record in the arbitration proceeding that supported that. And those facts included things like QCD sent a letter to its employees indicating that they were designated essential workers and that they would not be sent home during the pandemic, and that the disaster declaration and mandatory state shutdowns that occurred in March of 2020 exempted food service companies, which included not only QCD, but its clients, Starbucks stores. And the arbitrator noted that QCD didn't send all of its employees home. It didn't shut down its operation. It just reduced their guaranteed hours from 40 to 30 for several months beginning in April. Why did it do that? The arbitrator found it did so in part to maintain employee benefits, but also to maintain its operations. QCD was operating. There was no disaster that stopped it from conducting its business enterprise. There was no meteor that struck its warehouse. And the arbitrator correctly noted, in our opinion, that QCD's business circumstances, the downturn in its business operations related to a loss of customers by its clients, the Starbucks stores, which is consistent with the facts that the arbitrator put into the record. And so there was no legal or physical impediment to QCD continuing its operations. There was no direct natural disaster, natural hazard beyond human control that QCD could rely on. Really, what QCD was dealing with was a set of economic and governmental circumstances, which, of course, it didn't want to say to the union. It tried to use the act of God language in COVID-19 pandemic instead, because there's no provision in the contract for QCD to avoid its 40-hour guarantee because of a loss of business from one of its customers or because of an intervening governmental action. And certainly, as the parties renegotiate collective bargaining agreements, it has the opportunity to sit down with the union and to negotiate for some kind of language that would cover that. But it did not do that. QCD advances, I'll just go through this briefly, three arguments, two of which are really two sides of the same coin. So the first and third arguments that QCD advances are that the term act of God is unambiguous and that the union essentially violated the clear language of the contract. And then the third argument is that the union or the arbitrator essentially read the term, the act of God exclusion, out of the contract by not applying it. These are basically saying the same thing, which is that there was a clear commandment in the contract. That QCD, or sorry, that the arbitrator declined to follow. And not only is that, we believe, not true, but it goes back to a question of contract interpretation. And I think that this court's decision in Operating Engineers Local 139B, Findorf, is instructive on that point. That even where a district court, and it didn't happen in this case, but even where a reviewing body in its own estimation thinks that contract language is clear, it's not for the court to make that decision. These parties have contracted to have an arbitrator step in and decide those contract issues. And you can see from Article 11 in the Collective Bargaining Agreement, which is in the record, there's a mechanism for doing that. We get a list of arbitrators. We take turns picking. We wind up with an arbitrator that both parties selected, and by operation of that mechanism was not their first choice. And that person hears the evidence and issues an award. And with that, I would just close by saying that the parties got exactly what they bargained for here. QCD doesn't like the answer, but that's not a basis for overturning the award, and we respectfully request that you sustain the arbitrator's award and affirm the district court. Thank you. Thank you, counsel. Mr. Wolflick, your time has expired, but the court directs you to file a supplemental memorandum within 14 days containing the full name of the plaintiff and its parent corporation. And if it turns out that quality custom distribution is a division rather than a juridical entity, a motion to substitute the correct plaintiff, obviously with the consent of whoever that turns out to be, the court will accept a motion to dismiss the lawsuit in lieu of that memorandum. It's due in 14 days. When that memo is received, the case will be taken under advisement, and the court is in recess. Thank you.